FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JUL 08 2015 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
OSCAR AVECILLAS,

                Plaintiff,

-against-

RONBACK MARINE CONTRACTING
CORPORATION,

                Defendant.
----------------------------------------------------------X

**ORDER**
14-CV-4552 (SJF)(SIL)

FEUERSTEIN, J.

On July 30, 2014, plaintiff Oscar Avecillas ("plaintiff" or "Avecillas") commenced this action against defendant Ronback Marine Contracting Corporation ("defendant" or "Ronback Marine") asserting claims against for violations of the Jones Act, maintenance and cure, and unseathworthiness. [Docket Entry No. 1 (the "Complaint" or "Compl.")]. On March 2, 2015, a default judgment was entered against Ronback Marine. [Docket Entry No. 17]. The Court now considers plaintiff's claims for damages against Ronback Marine.

I.    BACKGROUND

On April 24, 2014, while working as a deckhand on a barge connected to a vessel owned by defendant, plaintiff sustained a leg injury and has since been unable to work. *See* Compl. ¶¶ 3-7. According to plaintiff's treating physician, Dr. Jordan Kerker, plaintiff suffered "a significant trimalleolar ankle fracture with disruption of the syndesmosis which can cause chronic stiffness and pain within the ankle." [Docket Entry No. 26 (Amended Motion for Damages with Monetary Judgment ("Motion for Damages")), Ex. 4]. Plaintiff alleges that he was entitled to full maintenance and cure, which defendant has not paid. Compl. ¶¶ 8-9. Plaintiff further alleges that defendant's negligence was a contributing factor in causing his

1

injury (*id.* ¶¶ 10-13) and that defendant's barge was unseaworthy in several ways, which was also a contributing factor in causing his injury. *Id.* ¶¶ 14-16.

On September 16, 2014, the Clerk of the Court issued a certificate of default against Ronback Marine [Docket Entry No. 8] and on October 1, 2014, plaintiff moved for default judgment. [Docket Entry No. 10]. On March 2, 2015, default judgment was entered against Ronback Marine [Docket Entry No. 17]. An inquest on damages was held on March 31, 2015, at which Ronback Marine failed to appear. [Docket Entry No. 21]. Plaintiff requests judgment in the amount of one million two hundred eighty-five thousand seven hundred twenty-one dollars and seventy-nine cents ($1,285,721.79), plus interest from March 2, 2015. *See* Motion for Damages. Ronback Marine has not filed a response to plaintiff's Motion for Damages or otherwise appeared in this action.

II. DISCUSSION

A. Legal Standard Governing Defaults

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 112 (E.D.N.Y. 2011) (citations omitted). "There is no question that a default judgment establishes liability." *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (citation omitted). "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). Therefore, once a party's default is established, damages must still be proven. *See Torres v. Santus LLC*, No. 11-civ-5481, 2014 WL 978431, at *5 (E.D.N.Y. Mar. 12, 2014) ("Courts must make an independent

assessment of damages when deciding a motion for default judgment"); *Gutman v. Klein*, No. 03-civ-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

B.  Plaintiff's Damages

In light of the default judgment, plaintiff is entitled to damages on his claims against Ronback Marine for violations of the Jones Act, maintenance and cure, and unseathworthiness. Plaintiff seeks recovery for medical expenses, outstanding liens, lost earnings, pain and suffering, and legal expenses.

1.  Medical Expenses

Plaintiff has submitted outstanding medical bills (Motion for Damages, at 2 & Ex. 2), establishing entitlement to three thousand eight hundred sixteen dollars and seventy-seven cents in medical expenses ($3,816.77), a category of damages recoverable under the Jones Act. *See Rofail v. United States*, No. 04-civ-2502, 2009 WL 1703236, at *10 (E.D.N.Y. June 18, 2009) ("Permissible awards of damages under the Jones Act include compensation for....medical care"). Therefore, the Court awards three thousand eight hundred sixteen dollars and seventy-seven cents ($3,816.77) for plaintiff's medical expenses.

2. Outstanding Liens

Plaintiff requests reimbursement to the New York State Insurance Fund in the amount of eleven thousand one hundred twenty-one dollars and sixteen cents ($11,121.16) for a three thousand two hundred twenty-eight dollar and fifteen cent ($3,228.15) workers' compensation lien and a thirteen thousand four hundred forty-three dollar and eight cent ($13,443.08) medical benefits lien, reduced by the statutorily-required one-third (1/3) (*see* Motion for Damages, at 2), and has attached a March 11, 2015 letter from the New York State Insurance Fund stating that: "the State Insurance Fund, as workers' compensation insurer of the claimant's employer, has paid $3,228.15 in workers' compensation and $13,443.08 in medical benefits to and on behalf of the claimant." Docket Entry 23-1, Ex. 1. However, other than this uncertified letter stating that the New York State Insurance Fund "*may* be entitled to a lien against the proceeds of any recovery received by the claimant in the legal action" (*id.*) (emphasis added), plaintiff has not provided documentation indicating the exact amount of any lien held by the State Insurance Fund, plaintiff's entitlement to damages to compensate the New York State Insurance Fund for any such lien, or the New York State Insurance Fund's written consent to the disposition of the lawsuit and the requested reimbursement. Therefore, plaintiff's request for reimbursement to the New York State Insurance Fund of any outstanding lien is denied.

3. Lost Earnings

Plaintiff seeks twenty-three thousand three hundred seventy-one dollars and eighty-six cents ($23,371.86) for lost earnings from the date of the accident to December 31, 2014 and seven hundred forty-five thousand five hundred dollars ($745,500.00) for future lost earnings. *See* Motion for Damages at 2-3. "A plaintiff may recover compensatory damages for lost income in Jones Act and unseaworthiness cases. But he must prove that his lost income occurred

4

by reason of the injury sustained from the accident." *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 592 (2d Cir. 1998) (citations omitted). Under the Jones Act, a plaintiff may recover both past lost earnings and damages "for the loss of prospective earnings." *Earl v. Bouchard Transp. Co.*, 735 F. Supp. 1167, 1172 (E.D.N.Y. 1990), *aff'd in part, remanded in part*, 917 F.2d 1320 (2d Cir. 1990); *see also McCrann v. United States Lines, Inc.*, 803 F.2d 771, 773 (2d Cir. 1986) (basic concept involved in calculating damage awards for lost wages of Jones Act claimant is to require tortfeasor to "put his victim in the same economic position that he would have occupied had he not been injured"); *Saleeby v. Kingsway Tankers, Inc.*, 531 F.Supp. 879, 888 (S.D.N.Y. 1981) ("Once liability is established in a case involving an unseaworthiness or a Jones Act claim the shipowner is liable to an injured seaman for any lost wages past, present and future") (citing *Calcagni v. Hudson Waterways Corp.*, 603 F.2d 1049 (2d Cir. 1979)). In cases where an injured plaintiff has been rendered unable to work, courts evaluate three (3) factors to determine the award for future lost earnings: "the plaintiff's expected future earning capacity had he not been injured, his life expectancy, and the appropriate discount rate to account for the time value of money." *Rofail*, 2009 WL 1703236, at *11 (citing *McWeeney v. New York, New Haven & Hartford R.R. Co.*, 282 F.2d 34, 35 (2d Cir. 1960)).

    a.  Past Lost Earnings

As support for his lost earnings claim, plaintiff has submitted his 2014 W-2 Wage and Tax Statement showing earnings of nine thousand nine hundred and fifty dollars ($9,950.00) for his work for defendant in the year 2014 until his accident on April 24th. *See* Motion for Damages, Ex. 3. In his affidavit, plaintiff states that his "actual prior wages were 40 hours a week at a rate of $23.75 per hour," that "[t]axes then were taken out in the amount of $156.20, bringing [his] net pay to $793.80. Thus, approximate wages for a typical year would be

$36,000.00." Motion for Damages, Ex. 1 (Further Affidavit in Support of a Monetary Judgment Against the Defendant by Plaintiff ("Further Avecillas Aff.")) ¶ 17. Plaintiff then states that he "verily believe[s] that [he] would have earned approximately an additional seven months of pay at $3,800 per month ($26,600.00), leaving a net owed for the year 2014 of $26,600.00 minus the Worker's Compensation payment of $3,228.14, leaving a net owed for the year 2014 of $23,371.86." *Id.* ¶ 18. Based upon this information and plaintiff's affirmation that he has been unable to work since the date of the accident (*id.* ¶ 15), the Court awards plaintiff damages for past lost earnings from the date of the accident until today in the amount of forty-one thousand, three hundred seventy-one dollars and eighty-six cents ($41,371.86), representing twenty-three thousand, three hundred seventy-one dollars and eighty-six cents ($23,371.86) for lost wages for 2014, and eighteen thousand dollars ($18,000.00) for lost wages for one-half of the 2015 year, plus pre-judgment "interest at a rate based on the average rate of return on one-year Treasury bills from the date of [plaintiff's] injury, [April 24, 2014], through the entry of judgment." *Rofail*, 2009 WL 1703236, at *17 ("In an action brought under general maritime law, a plaintiff is normally entitled to pre-judgment interest on loss of earnings."); *see also* 28 U.S.C. § 1961(a).[1] The Clerk of the Court is directed to calculate the interest on the $41,371.86 award for past lost wages from April 24, 2014 through entry of final judgment using this methodology.

---

[1] *See also Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007) (applying, for prejudgment interest rate, "the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time the claim arises until the entry of judgment pursuant to 28 U.S.C. § 1961(a)" and explaining that "[c]alculating the award should be done as follows: First, the award [ ] should be divided pro rata over the appropriate time period. Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. Third and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually.")(internal citations and quotations omitted).

b.  Future Lost Earnings.

Plaintiff also seeks damages for future lost earnings from today's date to the end of his working life based on his statements that "ha[s] no skills to perform any sedentary job and [is] unable to perform any work in the laboring field which requires [his] standing longer than 2 or 3 hours" (Further Avecillas Aff. ¶ 4), that "[b]ased upon [his] physical condition of inability to stand on [his] feet for more than two or three hours, [he] do[es] not believe that [he] will be able to find any work as a laborer" (*id.* ¶ 16), and that he is "unqualified to do any sedentary work, including desk work or anything of that nature." *Id.* However, while the evidence submitted supports plaintiff's claim that he currently is unable to bear weight on his ankle for long periods of time, there is insufficient evidence to support plaintiff's claims that he is permanently disabled and unable to do his past work or any work in the future. In March 2015, Dr. Kerker opined that "[o]n x-ray, the patient's fracture was significantly healed" [Docket Entry No. 23-3, at 3], that "[t]here were no abnormalities to note on x-ray" (*id.*), and that "[t]he patient was encouraged to start looking for employment without standing more than 3 hours at a time at one specific setting." *Id.* at 4. In an April 2015 addendum to his narrative, Dr. Kerker stated that plaintiff's prognosis was "guarded", that he "will require at least 1 to 2 years to recover from this ankle injury prior to knowing whether the patient will need further surgery," and that "[h]e *may* have difficulty weightbearing for long periods of time, walking for long periods of time and standing on his feet for an 8-hour workday." Motion for Damages, Ex. 4 (emphasis added). This "evidence [is] insufficient to support the assumption underlying [an] award [for future lost earnings], i.e., that plaintiff [will] be unable to perform any work for the remainder of his life" (*Coleman v. City of New York*, 87 A.D.3d 401, 401, 928 N.Y.S.2d 23 (App. Div. 1st Dept. 2011)) as it does not establish with reasonable certainty that plaintiff is permanently disabled and

prevented from doing work as a laborer or any other kind of work to justify an award for future lost earnings from today's date until the end of plaintiff's working life. Therefore, the Court declines to award plaintiff damages for future lost earnings as any such award would be speculative. *See Harris v. City of New York*, 2 A.D.3d 782, 784, 770 N.Y.S.2d 380 (App. Div. 2d Dept. 2003) (holding that "the claim for future lost earnings should have been dismissed as speculative" where "it was undisputed that the plaintiff was unable...to continue working as a police officer due to the injury he sustained to his right wrist...[but] the evidence did not support the expert's underlying assumption that the plaintiff's injury precluded him from engaging in any wage-earning activity"); *Blakesley v. State*, 289 A.D.2d 979, 980, 734 N.Y.S.2d 800 (App. Div. 4th Dept. 2001) (awarding past lost earnings but declining to award future lost earnings because "[t]here was no evidence supporting the conclusion that claimant stopped performing construction work in 1995 because of [her injuries], and there is no credible medical evidence that she is permanently disabled from engaging in such work in the future should she choose to do so").

    4. Pain and Suffering

Plaintiff seeks two hundred and fifty thousand dollars ($250,000.00) for pain and suffering and loss of enjoyment of life and disability from the date of the accident to the present (*see* Motion for Damages, at 3) and an additional two hundred and fifty thousand dollars ($250,000.00) for future pain and suffering, disability, loss of enjoyment of life, stiffness and swelling in his ankle. *Id.*

Damages for past and future pain and suffering are recoverable under the Jones Act. *See Harrington v. Atl. Sounding Co.*, 916 F. Supp. 2d 313, 328-29 (E.D.N.Y. 2013), *aff'd in part, vacated in part sub nom. Marasa v. Atl. Sounding Co.*, 557 F. App'x 14 (2d Cir. 2014), *as*

*amended* (Jan. 29, 2014) (awarding $500,000 for past pain and suffering and $700,000 for future pain and suffering for injuries sustained by seaman aboard defendant's vessel). "In determining plaintiff's pain and suffering award, the court must assess plaintiff's past and future pain and suffering, and must discount to present value any award of future pain and suffering, although such discounting need not apply the precision applicable to the discounting of future earnings." *Id.*; *see also Oliveri v. Delta S.S. Lines, Inc.*, 849 F.2d 742, 751 (2d Cir. 1988) ("[A]ll that is required for awards of non-pecuniary future damages is that the time value of money be taken into account.") (citations and quotations omitted); *Rofail*, 2009 WL 1703236, at *15 ("damages for future pain and suffering are discounted to the present value...[however], [i]n contrast to the method employed for discounting the loss of future earnings....discounting future pain and suffering damages may be undertaken without any precise mathematical adjustments, so long as the time value of money is taken into account") (citations omitted). "In addition to pain and suffering, the court must consider loss of life's pleasures, although the court need not assign separate figures to these measures, but rather, may compute a single pain and suffering figure, as long as there is no double counting." *Harrington*, 916 F. Supp. 2d at 328 (citing *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1326-27 (2d Cir. 1990)); *see also Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1044 (S.D.N.Y. 1993) ("An award for 'pain and suffering' includes compensation not just for physical pain, but for emotional pain and for loss of enjoyment of the pleasurable activities of life."). Bearing in mind that each litigant's injuries are unique and a heavily factual inquiry is required to assess damages, many courts look to what other fact-finders have found to be reasonable compensation in cases with similar injuries. *See Torres*, 2014 WL 978431, at *6-7.

Plaintiff has presented evidence showing that he suffered a trimalleolar ankle fracture with disruption of the syndesmosis which required urgent open reduction surgery and internal fixation of the right trimalleolar ankle fracture with plating and fixation of the distal fibula as well as a reduction and fixation with 2 cannulated screws of the medial malleolus. [Docket 23-3, at 1]. Plaintiff also had a disrupted syndesosis which required syndesmotic fixation. *Id.* The two (2) Stryker cannulated screws and a seven (7) hole Stryker straight fibular plate and Biomet Ziploop implanted into plaintiff's ankle will remain in place. [Docket Entry No. 23-1 (Affidavit of Oscar Avecillas ("Avecillas Aff.")) ¶ 4)]. Plaintiff spent several days at St. Joseph's Hospital before being discharged on crutches. [Docket 23-3, at 1]. At a follow-up visit to Dr. Kerker on January 22, 2015, plaintiff stated that he had not been able to return to work because of significant pain and dysfunction at the end of the day, significant swelling and pain while walking, and difficulty weightbearing more than three (3) hours at a time. *Id.* at 3. Dr. Kerker noted that plaintiff's incisions were clean, dry and intact but he did have some moderately residual swelling diffusely over the ankle, restricted dorsiflexion and plantar flexion, and inversion and eversion. *Id.* X-rays showed that plaintiff's fracture was significantly healed, the mortise and syndesmosis were congruent, and there "were no abnormalities to note on x-ray." *Id.* On March 2, 2015, plaintiff had persistent swelling and discomfort in the ankle, restricted motion and swelling, some tenderness over the Achilles tendon, significant for some middle Achilles tendinitis. *Id.* at 4. Dr. Kerker noted that plaintiff's fracture was "healed" and encouraged plaintiff "to start looking for employment without standing more than 3 hours at a time at one specific setting" and to continue home exercises and follow-up with him in several months. *Id.* An April 23, 2015 note from Dr. Kerker indicates that plaintiff's prognosis is "guarded due to the severity of the injury" [Docket Entry No. 26-4], that plaintiff "will require at

10

least 1 to 2 years to recover from the ankle injury prior to knowing" whether further surgery is required (*id.*), that there is a risk that he "suffers from chronic ankle impingement with the ankle joint and chronic stiffness" (*id.*), and he "may have difficulty weightbearing for long periods of time, walking for long periods of time and standing on his feet for an 8-hour workday." *Id.*

Plaintiff's affidavit states that "at the time of the accident [he] had excruciating and almost unbearable pain of ten on a scale of one to ten, at the range of ten being the most painful, when taken to the hospital" (Further Avecillas Aff. ¶ 9), that he continues to have "pain, stiffness and swelling on [his] ankle up to the present date" (*id.* ¶ 11), and that the "pain, swelling and restriction of motion in his right ankle…requires [him] to put more weight on [his] left ankle and have a limp." *Id.* ¶ 12. Plaintiff also states that he is now "completely limited from doing any laboring work and unable to perform jobs as [he] did in the past due to this accident" (*id.* ¶ 4), that this injury has caused him "great difficulty in playing with [his] children and doing [his] normal activities around the house" (*id.* ¶ 5), that he has "stiffness, achiness, pain and swelling in [his] right ankle" (*id.*) and that he "cannot do any of [his] recreational activities of soccer, volleyball and running" (*id.*) and he "cannot jump." *Id.* Plaintiff states that he has "suffered from a loss of enjoyment of life which includes the ability to be able to stand up on [his] feet for more than two or three hours, the ability to walk for more than a block or two and the ability to play with [his] children and assist [his] wife with activities around the home" as well as the sports activities listed above. *Id.* ¶ 19.

Based upon the examples provided by plaintiff of jury awards for similar ankle injuries [Docket Entry No. 22] and the Court's own search of comparable cases, an award of two hundred and fifty thousand dollars ($250,000.00) for past pain and suffering and two hundred and fifty thousand dollars ($250,000.00) for future pain and suffering, taking into account the

time value of money, is appropriate. *See e.g., Clark v. N-H Farms, Inc.*, 15 A.D.3d 605, 606, 791 N.Y.S.2d 122 (App. Div. 2d Dept. 2005) (award of $200,000 for past pain and suffering and $225,000 future pain and suffering was reasonable where plaintiff sustained trimalleolar ankle fracture that required surgery); *Rydell v. Pan Am Equities, Inc.*, 262 A.D.2d 213, 213, 692 N.Y.S.2d 333 (App. Div. 1st Dept. 1999) (finding that "jury's award of $200,000 for past pain and suffering and $300,000 for future pain and suffering did not constitute a material deviation from what is reasonable compensation under the circumstances given the evidence demonstrating that plaintiff suffered a severely fractured ankle, which has thus far required surgery for open reduction and fixation and for removal of surgical hardware and may yet require additional surgery, and continues to experience the debilitating effects of the injury, among them symptoms of the onset of degenerative arthritis"); *So v. Wing Tat Realty, Inc.*, 259 A.D.2d 373, 373-74, 687 N.Y.S.2d 99 (App. Div. 1st Dept. 1999) (holding that it was improvident for a trial judge to overrule a jury's verdict granting $400,000 for past pain and suffering and $200,000 for future pain and suffering for plaintiff who suffered a multiple ankle fracture and torn ligament that required open reduction surgery and the insertion of a metal plate, and necessitated ambulation on crutches for two years following the accident and a "guarded" prognosis by her physician); *BACARES vs. LIRR.*, 16 NY. J.V.R.A. 11:C8, 1999 WL 35218584 (awarding $175,000 for past pain and suffering, $300,000 for future pain and suffering for plaintiff who suffered bimalleolar fracture which required an open reduction and internal fixation, an arthrotomy and possible future procedures). Therefore, the Court awards two hundred and fifty thousand dollars ($250,000.00) for plaintiff's past pain and suffering, and two hundred and fifty thousand dollars ($250,000.00) for plaintiff's future pain and suffering.

### 5. Legal Expenses

Plaintiff's request for one thousand nine hundred and twelve dollars ($1,912.00) in legal expenses (*see* Motion for Damages, at 3) is denied because plaintiff has not demonstrated bad faith on the part of defendant or that a contract or statute explicitly provides for such an award. *See Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987) ("[T]he general rule is that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith."); *Rofail*, 2009 WL 1703236, at *17 (declining to award attorney's fees or costs in action brought pursuant to general maritime law and the Jones Act because there was "no showing of bad faith on the part of defendants"); *Eurosteel Corp. v. M/V KOGGEGRACHT*, No. 01-civ-7731, 2003 WL 470575, at *4 (S.D.N.Y. Jan. 20, 2003) ("It is the normal rule both within and outside maritime law that in the absence of statute or contractual authorization, attorney's fees are not generally recoverable either as part of costs or of damages."); *Zim-Am. Israeli Shipping Co. v. Atcom Indus., Inc.*, No. 94-civ-74, 1995 WL 347022, at *1 (E.D.N.Y. May 31, 1995) (granting default judgment but declining to award costs and attorney's fees because plaintiffs "failed to make a showing that the defendants acted in bad faith or that a contractual provision entitles it to the award of attorney's fees").

### III. CONCLUSION

In light of the default judgment entered against defendant, and having considered the undisputed evidence presented by plaintiff in support of his request for damages, the Court concludes that plaintiff is entitled to an award of three thousand eight hundred sixteen dollars and seventy-seven cents ($3,816.77) for medical expenses, forty-one thousand, three hundred seventy-one dollars and eighty-six cents ($41,371.86) for past lost earnings plus pre-judgment interest on that award, five hundred thousand dollars ($500,000.00) for past and future pain and

suffering, and post-judgment pursuant to 28 U.S.C. § 1961 as of the date of entry of final judgment. Plaintiff's requests for reimbursement to the New York State Insurance Fund, future earnings, and attorney's fees are denied. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein  
Sandra J. Feuerstein  
United States District Judge

Dated: July 8, 2015  
       Central Islip, New York